# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT



| | | |
|---|---|---|
| Kathleen LaGuardia, | ) | Docket No.: 2016-02-0380 |
| Employee, | ) | |
| v. | ) | State File Number: 51640-2016 |
| | ) | |
| Total Holdings/Hutchinson Sealing, | ) | Judge Brian K. Addington |
| Employer, | ) | |
| And | ) | |
| | ) | |
| Insurance Co. of the State of PA, | ) | |
| Insurance Carrier. | ) | |

## EXPEDITED HEARING ORDER

This matter came before the undersigned Workers' Compensation Judge on October 11, 2016, on the Request for Expedited Hearing filed by the employee, Kathleen LaGuardia, under Tennessee Code Annotated section 50-6-239 (2015).

The present focus of this case is whether Ms. LaGuardia is entitled to payment of medical and temporary disability benefits. The central legal issue is whether Ms. LaGuardia suffered an injury by accident arising primarily out of and in the course and scope of her employment.[1] For the reasons set forth below, the Court finds Ms. LaGuardia has not submitted sufficient evidence from which this Court could conclude she is likely to prevail at a hearing on the merits on the central legal issue and holds she is not entitled to medical or temporary benefits at this time.

### History of Claim

Ms. LaGuardia worked as a machine operator at Total, which makes rubber fittings for the automobile industry. Her job required movement between workstations.

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an Appendix.

1

She stood on a rubber mat, but walked on bare concrete floors between the mats. Total placed the mats at each workstation for ergonomic reasons.

Ms. LaGuardia and other witnesses testified that, prior to the incident in question, the work area contained several hazards. The work area was dusty due to small particles of rubber on the floor and workbenches. Small metal pieces, which Ms. LaGuardia and other employees removed from the rubber parts, ended up on the floor and stuck to her shoes. At times, plastic boxes in the work area contained "trash," including random screws, which would end up on the floor. Ms. LaGuardia did not complain to Total about these hazards prior to the incident in question.

Before the alleged work injury occurred, Ms. LaGuardia sought medical treatment for swollen heels, and her provider at Holston Medical Group diagnosed plantar fasciitis.[2] (Ex. 3, 1-2.) As a result of discussions with the provider, Ms. LaGuardia wore compression socks.

On July 11, 2016, Ms. LaGuardia worked several hours. As she attempted to move around her work area, she stepped to her right. She stood on a rubber mat and placed her right foot on concrete. At that point, she testified her right foot slipped and she fell, striking her right lower leg on the floor.

A co-worker, Linda Hall, testified that she worked next to Ms. LaGuardia and observed the incident. Instead of Ms. LaGuardia slipping on the concrete floor, Ms. Hall testified that Ms. LaGuardia caught her right foot on her left leg and that was the cause of her fall.

Ms. Hall left Ms. LaGuardia to report the fall and request assistance. Several employees came to assist and helped her into a wheel chair. The employees took her to the occupational health nurse station. Cynthia Stanton, the nurse, testified she looked over Ms. LaGuardia's shoes and did not find any material on her shoes. Mr. Brian Jarnigan, a nearby supervisor, took photos of Ms. LaGuardia's work site soon after the accident. (Exs. 5-6, 19-20.) The photos show a level concrete floor.

Ms. LaGuardia informed Ms. Stanton that she needed outside medical attention. Ms. Stanton provided her a panel of physicians from which she chose Wellmont.[3] (Ex. 30.)

Prior to leaving work, Ms. LaGuardia and Ms. Stanton completed an incident report. In Ms. LaGuardia's portion of the report, she stated, "Step to right, on right foot, slipped on right foot, right ankle slammed on floor and I fell backward to floor."

---

[2] The records do not contain the provider's name.
[3] Wellworks is the provider listed on the physician panel. Other records reference Wellmont Medical Associates. For ease of reference, the Court will use the name Wellmont.

An acquaintance took Ms. LaGuardia to Wellmont, as she was unable to drive. X-rays there indicated a displaced spiral fracture of the tibia. (Ex. 2 at 2.) The providers at Wellmont referred her to Watauga Orthopedics.

At Watauga, Ms. LaGuardia came under the care of Dr. Eric Parks. In the history portion of his notes, Dr. Parks noted Ms. LaGuardia slipped. He splinted Ms. LaGuardia's right leg and recommended surgery by his partner, Dr. Karen McRae. *Id.* at 3-5.

On August 15, 2016, Ms. LaGuardia met with Dr. McRae and advised she slipped on concrete. Dr. McRae later performed surgery and has followed Ms. LaGuardia since. *Id.* at 4, 11-13, 48-52. Dr. McRae wrote a letter to Ms. LaGuardia's counsel providing her opinion that Ms. LaGuardia suffered the fracture when she slipped and that she did not suffer an idiopathic injury. (Ex. 18.)

Sometime after she fell, Ms. LaGuardia examined her shoes and found a small piece of metal and a screw embedded in the bottom of them. (Ex. 10.) Ms. LaGuardia was unsure of the exact date she examined her shoes.

The parties acknowledged that Ms. LaGuardia has not worked since the incident. However, Total terminated Ms. LaGuardia on July 28, 2016, for violation of company policy. Lisa Meadows, Total's Human Resource Director, testified Total terminated Ms. LaGuardia for excessive absenteeism, but acknowledged Ms. LaGuardia would not have accumulated enough points for termination had Total found her fall was work-related. (Ex. 12.)

Total denied the claim the day after the incident and has not paid any of Ms. LaGuardia's medical bills. It also has not paid any mileage for travel to medical providers.[4]

At the Expedited Hearing, Ms. LaGuardia argued that she slipped at work and fractured her ankle. She acknowledged she does not know why she slipped, but asserted she does not have to prove why she slipped, only that she slipped while working. She pointed to the many hazards in her workstation that could have caused her slip. She asserted Ms. Hall testified as she did because Ms. Hall fears for her job. Ms. LaGuardia relied on Dr. McRae's letter to support her positon that her injury was not idiopathic. She requests temporary disability benefits at the rate of $390.11[5] from the date of injury to present. She testified she was justified in seeking medical treatment on her own because Total's insurance carrier denied her claim the day after the accident.

---

[4] Ms. LaGaurdia's medical bills and mileage request are contained in exhibits 13-16.
[5] The parties stipulated this was the correct compensation rate.

Total asserted that Ms. LaGuardia does not know why she fell but that its witness, Ms. Hall, does know — she tripped over her own leg. Total contended that, while Ms. LaGuardia has pointed to several hazards in her workplace, she has not asserted which one, if any, caused her to fall. Total asserted Ms. LaGuardia suffered plantar fasciitis, which may have contributed to her fall at work. As such, Ms. LaGuardia failed to present sufficient evidence to suggest she would succeed at trial. Total argued it does not owe any medical or temporary disability benefits. It requested that Ms. LaGuardia's claim for benefits be denied.

**Findings of Facts and Conclusions of Law**

As the injured employee seeking benefits, Ms. LaGuardia has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). Ms. LaGuardia need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). However, at an expedited hearing, she has the burden to come forward with sufficient evidence from which the trial court can determine that she is likely to prevail at a hearing on the merits. *Id.*

To be compensable under the Workers' Compensation Law, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14) (2015). The term "injury" is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* An injury is accidental only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment. Tenn. Code Ann § 50-6-102(14)(a) (2015).

First, the Court must address Ms. LaGuardia's assertion that, since she slipped at work, her injury must be compensable. She asserted she could find no case law where a person slipped and did not succeed at Court. Although that may be true, injuries caused by falls on the job require detailed and careful analysis to determine whether or not they are causally related to the employment. *Byrom v. Randstad N. Am., L.P.,* No. M2011-00357-WC-R3-WC, 2012 Tenn. LEXIS 152, at *12 (Tenn. Workers' Comp. Panel Mar. 8, 2012).

Ms. LaGuardia alleged an injury arising from a specific, work-related slip on concrete on July 11, 2015. The photos in evidence show a level concrete area. Ms. LaGuardia has not asserted that the mat on which she was standing caused her to slip, but

4

that she slipped on the concrete as she took a step.

Ms. LaGuardia consistently testified and told others that she does not know what caused her to slip. She asserted that it was sufficient to prove she slipped. She asserted that many things, including the items she located in her shoes, may have caused her to slip.

First, the Court cannot find that Ms. LaGuardia slipped on a hazard at work. The Court accredits her testimony as well as Ms. Hall's. The Court observed both witnesses and believes they both told the truth. Ms. Hall stated Ms. LaGuardia fell after her right foot caught on her left leg. The Court is aware of the semantic differences in the stories– a slip versus catching a foot on a leg. Ms. LaGuardia cannot state what caused her to slip whereas Ms. Hall affirmatively stated she caught her foot on her leg. The Court accredits Ms. Hall's version of events and finds Ms. LaGuardia fell as a result of catching her right foot on her leg.

Therefore, since there was a cause for her fall, the Court cannot find that Ms. LaGuardia suffered an idiopathic fall. Idiopathic falls occur when the fall is caused by an unknown cause. *Byrom*, at *12-13.

Second, simply falling and sustaining an injury while walking on a flat concrete floor is not a compensable fall, unless caused by a hazard incident to the employment. *Id.* at *13. Ms. LaGuardia testified she slipped as she took a step and fell but cannot point to the cause of her fall. This matter is similar to the *Byrom* case where the Court stated:

> The evidence presented in this case merely shows that there were several potential causes for Employee's fall. Some causes were related to his work; some causes were not related to his work. The evidence did not support a conclusion that any one of those potential causes was more likely than not the actual cause of the fall and therefore the cause of Employee's injury.

*Id.* at *17.

As in *Byrom*, Ms. LaGuardia can point to many things that could have caused her fall, but cannot state for certain which of the potential hazards actually caused it. However, Ms. Hall did state with certainty that Ms. LaGuardia fell after catching her foot on her leg. Given Ms. LaGuardia's testimony that she placed her foot on concrete with no clear obstruction–just potential ones–the Court cannot find she slipped due to an employment hazard.

Under these circumstances, the Court declines to hold Total responsible for payment of any past or ongoing medical or temporary disability benefits at this time,

5

because it does not appear to the Court that Ms. LaGuardia is likely to succeed at hearing on the merits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. LaGuardia's request for medical and temporary disability benefits is denied.

2. This matter is set for Initial (Scheduling) Hearing on December 1, 2016, at 10:00 a.m. Eastern.

**ENTERED this the 20th day of October, 2016.**

/s/ Brian K. Addington

**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Brian K. Addington, Court of Workers' Compensation Claims. You must call toll-free at 855-543-5044 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's

7

position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:
1. Affidavit of Ms. LaGuardia;
2. Medical Records – Collective Exhibit;
3. Medical Records – Holston Medical Group;
4. C-41 Wage Statement;
5. Photo;
6. Photo;
7. Photo;
8. Photo;
9. Incident Report;
10. Items found by Ms. LaGuardia in her shoes;
11. Medical Record-Dr. Karen McRae;
12. Separation Notice;
13. Medical Bills-Watauga Orthopedics;
14. Medical Bills-Mountain Empire Surgery Center;
15. Medical Bills-Wellmont;
16. Mileage Request;
17. Incident Report (For Identification Only);
18. Letter from Dr. McRae;
19. Photo with date stamp;
20. Photo with date stamp;
21. Handwritten report-Brian Jarnigan;
22. Window molding;
23. Sponge;
24. Photo;
25. Photo;
26. Photo;
27. Handwritten Report-Co-Worker Linda Hall;
28. Handwritten Report-Supervisor Hagen Allen;
29. Typed Report-HR Manager Lisa Meadows;
30. Typed Report-Plant Nurse Cynthia Stanton; and
31. Panel of Physicians.

Technical record:[6]
1. Request For Expedited Hearing;
2. Petition for Benefit Determination, July 28, 2016;
3. Dispute Certification Notice, September 9, 2016;
4. Ms. LaGuardia's Trial Brief; and,

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

5. Employer's Pre-Trial Brief.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 20th day of October, 2016.

| Name | Certified Mail | Via Email | Service Sent To: |
|------|------|------|------|
| Richard Currie, Esq. Attorney for Ms. LaGuardia | | X | rcurrie@wilsonworley.com |
| Michael Forrester, Esq. Attorney for Total | | X | forrest@hsdlaw.com |

/s/ Penny Shrum
**Penny Shrum, Clerk of Court**
**WC.CourtClerk@tn.gov**

10